UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SHIRLON HAYWOOD,

                Plaintiff,

v.

DELTA AIRLINES, INC.,

                Defendant.

**MEMORANDUM & ORDER**
21-CV-7144 (HG) (JAM)

**HECTOR GONZALEZ**, United States District Judge:

      Plaintiff Shirlon Haywood brings this action against Defendant Delta Airlines, Inc. ("Delta"), asserting a claim under Section 241(6) of the New York Labor Law ("NYLL"), which requires that construction, excavation, and demolition sites be designed and managed to ensure the safety and protection of workers. ECF No. 1-1 (Complaint). Plaintiff alleges that Delta failed to provide a safe work environment by having him work in an area with live electricity. ECF No. 48 (Plaintiff's Motion for Summary Judgment). Presently before the Court are Plaintiff's and Defendant's cross-motions seeking summary judgment. ECF No. 48; ECF No. 49-28 (Defendant's Motion for Summary Judgment). For the reasons set forth below, both motions are DENIED.

**BACKGROUND**[1]

      On August 14, 2019, Plaintiff suffered electric shock while working at Terminal C of LaGuardia International Airport ("Terminal C"), which was leased and operated by Delta. ECF No. 49-27 ¶¶ 1–4 (Defendant's 56.1 Counterstatement); ECF No. 49-26 ¶ 1 (Plaintiff's 56.1

---

[1]     Unless otherwise specified, the facts cited herein are undisputed.

Counterstatement). At the time of his injury, Plaintiff was employed by ISS Facility Services, Inc. ("ISS"), which had entered into a facilities maintenance agreement with Delta (the "Agreement") whereby ISS would provide building maintenance and repair services for the structures, utilities, and equipment at Terminal C. *Id.* ¶¶ 2–3; ECF No. 49-27 ¶¶ 2–3. The Agreement specifically required ISS to maintain electrical alarm systems, communication equipment, waste disposal equipment, related control panels, and a sewage system. ECF No. 49-26 ¶¶ 4–5. Beyond maintenance and repair services, ISS was tasked with inspecting "structures, facilities and utility systems to identify maintenance and repair work" that needed to be done at Terminal C. *Id.* ¶ 6.

The sewage ejector pit and pumping system at Terminal C, which ISS maintained and inspected, included an alarm system comprised of a strobe light and siren designed to alert the maintenance team of potential malfunctions or overflow risks (the "Alarm System"). *Id.* ¶¶ 9, 23–24; ECF No. 49-27 ¶ 4. On the day of Plaintiff's injury, ISS chief engineer Roger Soodeen instructed Plaintiff and his co-worker, Michael Faust, to remove and relocate the Alarm System from the electrical panel in the sub-basement of Terminal C to the boiler room, which was located one level above. ECF No. 49-27 ¶¶ 3–4, 8. In order to perform this work, Plaintiff and Faust had to: cut the wires connected to the Alarm System; extend the wires across the basement so they could be fed up one level to the boiler room through a hole between floors; and then reconnect the wires to the Alarm System and mount it to the wall of the boiler room. *Id.* ¶¶ 9–11.

Plaintiff first removed the strobe light, ran its wiring through the hole in the sub-basement ceiling, and relocated it to the boiler room. *Id.* ¶ 16. Meanwhile, Faust installed a mounting bracket on the boiler room wall by drilling into the cement sidewall and securing the

bracket with screws. *Id*. ¶¶ 12, 16. Plaintiff next began to relocate the siren. *Id*. ¶ 17. Plaintiff alleges that, while disconnecting the siren's wire and cutting it with a wire stripper, he was shocked by electricity for between 10 and 20 minutes. ECF No. 49-12 at 27; ECF No. 48-2 at 16–17.[2]

## PROCEDURAL HISTORY

Plaintiff commenced this action in Kings County Supreme Court on June 21, 2021. ECF No. 1-1. Delta answered the Complaint on September 1, 2021. ECF No. 1-2 (Answer). Delta removed the action on December 28, 2021. ECF No. 1 (Notice of Removal). In his Complaint, Plaintiff originally asserted three causes of action against Delta for negligence, violation of NYLL Section 241(6), and violation of NYLL Section 200. ECF No. 1-1 at 3, 5, 7. On October 16, 2023, the parties stipulated to the dismissal, with prejudice, of Plaintiff's negligence and NYLL Section 200 claims.[3] ECF No. 33 (Stipulation). On June 11, 2024, Plaintiff and Defendant each moved for summary judgment on the remaining NYLL Section 241(6) claim. ECF No. 48; ECF No. 49-28. The motions were fully briefed on July 30, 2024.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[2]    The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

[3]    The parties' stipulation also purported to dismiss Plaintiff's claims under "Labor Law 240(1)." ECF No. 33 at 1. The Complaint, however, does not assert claims under Section 240(1) and Plaintiff never sought to amend his Complaint to add any such claims. ECF No. 1-1.

3

matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).[4]  The moving party has the burden of demonstrating that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

In deciding a summary judgment motion, any ambiguities and justifiable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).  Although "courts must refrain from assessing competing evidence in the summary judgment record and avoid making credibility judgments," a plaintiff must defeat summary judgment by putting forth "evidence on which the jury could *reasonably* find for the non-moving party."  *Saeli v. Chautauqua Cnty.*, 36 F.4th 445, 456 (2d Cir. 2022).  When parties file cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  *Morales v. Quinel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## DISCUSSION

Plaintiff alleges that Defendant is liable under Section 241(6) because Defendant "failed to make sure Plaintiff was not caused to work in an area that contained live electric[ity]." ECF No. 48 at 7.  Section 241(6) "requires owners and contractors to provide reasonable and adequate protection and safety for workers and to comply with the" New York State Industrial Code (the

---

[4]  Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

4

"Industrial Code").  *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 618 N.E.2d 82, 86 (N.Y. 1993).  It further requires that "[a]ll areas in which construction, excavation or demolition work is being performed . . . be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places."  NYLL § 241(6).  "To state a claim under Labor Law § 241(6), a plaintiff must allege a violation of a particular provision of the New York Industrial Code."  *McNeight v. Railcar Custom Leasing, LLC*, 345 F. App'x 612, 615 (2d Cir. 2009) (citing *Ross*, 618 N.E.2d at 86).

Here, Plaintiff alleges that Defendant violated the following provisions of the Industrial Code requiring employers to:  (1) determine whether work could bring employees into contact with electric circuits and post warning signs and inform employees of hazards and protective measures, N.Y. Comp. Codes R. & Regs. tit 12 ("12 NYCRR") § 23-1.13(b)(3); (2) ensure that employees do not work near electric circuits unless they are protected by the circuit being deenergized, grounded, or insulated, 12 NYCRR § 23-1.13(b)(4); and (3) ensure that all devices and equipment be kept sound and operable, and that damaged equipment is immediately repaired or removed from a job site, 12 NYCRR § 23-1.5(c).

I. **Defendant's Motion for Summary Judgment**

Defendant argues that Plaintiff "cannot succeed" on his Section 241(6) claim because "the subject incident did not occur within the context of construction, excavation, or demolition work, which is the requirement plainly stated within Labor Law § 241(6)."  ECF No. 49-28 at 7.  Defendant is correct that Plaintiff's Section 241(6) claim turns on the question of whether Plaintiff was engaged in "construction" work when he was injured.  The New York Court of Appeals has clearly stated that Section 241(6) does "not apply to claims arising out of

5

maintenance of a building or structure outside of the construction context." *Nagel v. D & R Realty Corp.*, 782 N.E.2d 558, 558 (N.Y. 2002). However, "[l]iability under Labor Law § 241(6) is not limited to accidents on a building construction site." *Joblon v. Solow*, 695 N.E.2d 237, 242 (N.Y. 1998) (holding that plaintiff was engaged in work within the purview of Section 241(6) despite plaintiff not working on a construction site because the work significantly changed the composition of the building). In determining the applicability of Section 241(6), courts "look to the regulations contained in the Industrial Code (12 NYCRR 23-1.4(b)(13)) to define what constitutes construction work within the meaning of the statute." *Id.*

Under the Industrial Code, the types of work that constitute construction include "erection, *alteration*, repair, maintenance, painting or moving of buildings or other structures." *Id.* (emphasis in original); *see also* 12 NYCRR § 23-1.4. "The Industrial Code definition of construction work, which includes maintenance, must be construed consistently with [the] understanding that section 241(6) covers industrial accidents that occur in the context of construction, demolition and excavation." *Nagel*, 782 N.E.2d at 561. In interpreting the Industrial Code, New York courts have explained that "[c]onstruction work pursuant to 12 NYCRR 23-1.4(b)(13) may include the work of hoisting, land clearing, earth moving, grading, excavating, trenching, pipe and conduit laying, road and bridge construction, concreting, *equipment installation* and the structural installation of wood, metal, glass, plastic, masonry and other building materials in any form or for any purpose." *Nagel*, 782 N.E.2d at 561 (emphasis added); *Lopez v. Kamco Servs., LLC*, 219 N.Y.S.3d 152, 153 (N.Y. App. Div. 2024) (same). Plaintiff argues that although the relocation of the Alarm System did not "occur at a formal construction site," the work still "should be deemed an alteration" as defined by the Industrial Code, and

6

therefore the Court should find that he engaged in "construction work" covered by Section 241(6). ECF No. 48 at 15, 18. Plaintiff further contends that the work he performed should be considered "construction" within the meaning of NYLL Section 241(6) because his work caused "the Delta terminal structure [to be] altered" and the work "in no way was routine maintenance." *Id.* at 15. Defendant counters that Section 241(6) does not apply to the relocation of the Alarm System because the work was not "performed in the context of construction, excavation, or demolition." ECF No. 49-28 at 20. Specifically, Defendant argues that the work performed was not an alteration, but was merely "maintenance work" because "[h]ad the subject work been completed, the alarm system . . . would have functioned exactly the same as it did before the work." *Id.* at 23.

The Court agrees with Plaintiff that, as alleged, the at-issue-work constitutes an alteration under New York law. In the context of Section 241(6), an "alteration" requires "making a *significant* physical change to the configuration or composition of the building or structure," and the New York Court of Appeals has found than an activity constitutes a "significant physical change" when it involves substantial modifications to the physical structure of a building or its components. *Joblon*, 695 N.E.2d at 241 (emphasis in original). In *Joblon*, the plaintiff was injured while installing an electric wall clock in a mail room by extending electrical wiring from an adjacent utility room to allow the clock to connect to an existing power source in the utility room. *Id.* at 239. To accomplish this, the *Joblon* plaintiff needed to bring wires from an existing power source in the utility room, encase the wires in conduit, break through the wall dividing the rooms using

7

a hammer and chisel, and run the conduit through the hole in the utility room wall before connecting them to the clock. *Id*. The New York Court of Appeals found that:

> [A]lthough the question is close—the work performed by [plaintiff] was a significant physical change to the configuration or composition of the building. [Plaintiff] did more than the routine act of standing on a ladder to hang a clock on a wall. Bringing an electrical power supply capable of supporting the clock to the mail room, which required both extending the wiring within the utility room and chiseling a hole through a concrete wall so as to reach the mail room is more than a simple, routine activity and is significant enough to fall within the statute.

*Id.* at 241–42. Although the facts presented in this case are similar to those of *Joblon*, Defendant argues that since Plaintiff did not have to chisel through a wall as the plaintiff did in *Joblon*, *Joblon* is distinguishable, and Plaintiff's work does not constitute an "alteration." ECF No. 49-28 at 7. Defendant also argues that much of the caselaw to which Plaintiff cites is inapplicable because it analyzes "alteration" in the context of NYLL Section 240 instead of Section 241(6). *Id*. The Court disagrees.

First, *Joblon* and its progeny make clear that the standard for determining what is an "alteration" under Section 241(6) is the same as under Section 240. *See Joblon*, 695 N.E.2d at 242 ("Having concluded that Joblon was engaged in altering under Labor Law § 240(1) at the time of his injury, we likewise determine that the facts presented could support a claim under Labor Law § 241(6)."); *see, e.g.*, *Lassig v. Woodward*, No. 15-cv-885, 2017 WL 4023347, at *7 (N.D.N.Y. Sept. 12, 2017) (applying the same alteration standard to Section 240 and Section 241(6) claims); *Riccio v. NHT Owners, LLC*, 858 N.Y.S.2d 363, 366 (N.Y. App. Div. 2008) (same); *Smith v. Pergament Enters. of S.I.*, 706 N.Y.S.2d 505, 508 (N.Y. App. Div. 2000) (same).

Second, the Court finds that even though Plaintiff did not have to chisel through a wall, his work still constitutes an alteration under the *Joblon* standard. On the same day *Joblon* was

8

decided, the Court of Appeals applied the *Joblon* standard to a plaintiff who was "running computer and telephone cable through the ceiling from an existing computer room" to another room in the building without having to make any holes in the wall to do so. *Weininger v. Hagedorn Co.*, 695 N.E.2d 709, 710 (N.Y. 1998). The Court of Appeals held that running wires through "a series of [pre-existing] holes punched in the ceiling" involved "making a significant physical change to the configuration or composition of the building or structure," and was "not a simple, routine activity." *Id.*; *see also Emery v. Steinway, Inc.*, 116 N.Y.S.3d 227, 229 (N.Y. App. Div. 2019) ("[R]unning cables is considered to be a significant physical change to fall within the purview of alteration and not routine maintenance."); *Roberts v. Globalfoundries, U.S., Inc.*, No. 13-cv-1169, 2015 WL 12942046, at *4 (N.D.N.Y. Sept. 14, 2015) (concluding that plaintiff's work-related task of "pulling wire through a conduit at a junction box located on the sub-floor of a recessed area in the air chase room" constituted "altering of a building or structure within the meaning of Labor Law § 240(1)"). Here, it is undisputed that "Plaintiff ran the wiring through a hole in the sub-basement ceiling in order to feed the wire and removed the strobe light and relocated it to a board in the old boiler room." ECF No. 49-27 ¶ 16. Based on these undisputed facts, the Court finds that Plaintiff's work constitutes an "alteration," and that the facts presented could support a claim under Section 241(6). Accordingly, Defendant's motion for summary judgment is denied. *Joblon*, 695 N.E.2d at 242; *see also Saint v. Syracuse Supply Co.*, 30 N.E.3d 872, 877 (N.Y. 2015) (holding that since "plaintiff was engaged in work that constitutes an alteration" under the *Joblon* standard, the Appellate Division's grant of summary judgment to defendants was erroneous).

9

## II.     Plaintiff's Motion for Summary Judgment

Plaintiff argues that he is entitled to summary judgment because it is undisputed that he was shocked by electricity, and therefore the Court must find that the specific provisions of the Industrial Code to which he cites were violated. ECF No. 48 at 11. The Court disagrees because there are material disputes of fact that prevent it from concluding that the Industrial Code provisions upon which Plaintiff relies were violated.

Plaintiff contends that Defendant violated the Industrial Code's protection of employees provision, 12 NYCRR § 23-1.13(b)(4), by not ensuring that the circuit was deenergized. ECF No. 48 at 9. However, there is a factual dispute as to whether it was Plaintiff's responsibility to deenergize the control panel before starting work. ECF No. 49-28 at 37; ECF No. 51 at 29 (Plaintiff's Opposition); *see Goundan v. Pav-Lak Contracting Inc.*, No. 155989/2014, 2019 WL 1405345, at *6 (N.Y. Sup. Ct. Mar. 28, 2019) ("While the circuit was not deenergized here, it was [plaintiff's] responsibility to deenergize it before he began his work. Thus, plaintiff[] do[es] not establish, *prima facie*, a violation of [Section 23-1.13(b)(4)] on [his] cross motion."). The undisputed facts establish that Plaintiff was aware that the power was on and that he knew where the shutoff was located. ECF No. 49-26 ¶¶ 47–48. Plaintiff contends that he and his coworker, Faust, were instructed to leave the power on while relocating the Alarm System. ECF No. 49-27 ¶ 14. This assertion is supported by Faust's affidavit. ECF No. 48-7 at 2. However, Defendant disputes this claim, citing Faust's deposition testimony where he stated that he did not recall being told to leave the power on. ECF No. 49-14 at 16. Additionally, Plaintiff's supervisor, Soodeen, testified that he did not direct Plaintiff or Faust to keep the power on. ECF No. 49-9 at 14–15. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the [C]ourt on summary judgment." *Jeffreys v. City of New York*,

10

426 F.3d 549, 553 (2d Cir. 2005).  Because the Court cannot determine whether Section 23-1.13(b)(4) was violated without resolving this factual dispute, summary judgment is inappropriate.

As to the investigation and warning provision, 12 NYCRR § 23-1.13(b)(3), Plaintiff does not dispute that he knew the power was on when relocating the Alarm System.  ECF No. 49-26 ¶ 47.  Some courts have held, in similar situations, that this sort of awareness is fatal to a claim arising under the investigation and warning provision.  *See Goundan*, 2019 WL 1405345, at *6 ("[Plaintiff] knew the location of the circuit and of the danger of working with live electrical power. Thus defendant['s] failure to comply with 12 NYCRR § 23-1.3(b)(3) was not the proximate cause of [plaintiff's] accident.").  However, whether Plaintiff was instructed to leave the power on is disputed, as already discussed.  ECF No. 49-27 ¶ 14; *see Lorefice v. Reckson Operating P'ship, L.P.*, 703 N.Y.S.2d 507, 509 (N.Y. App. Div. 2000) ("The defendant's contention that [plaintiff] made a decision to work at a live electrical panel with full knowledge of the risk of an electrical shock is relevant to the issue of [plaintiff's] comparative negligence."). Therefore, summary judgment based on a violation of the Section 23-1.13(b)(3) is not warranted.

Plaintiff further asserts that Defendant violated the Industrial Code's safety equipment provision.  12 NYCRR § 23-1.5(c).  However, there are material factual disputes regarding whether Plaintiff was adequately guarded from the circuit by effective insulation and whether the wire cutter he was using was properly insulated.  Defendant points to Plaintiff's deposition testimony where he says his wire cutter was insulated and none of the insulation was missing while Plaintiff points to an OSHA report finding that his tools were defective and not properly insulated.  ECF No. 49-27 ¶¶ 17, 22, 29; ECF No. 49-26 ¶ 52.  These disputes preclude a finding of summary judgment in Plaintiff's favor.  *New York v. Scalia*, 490 F. Supp. 3d 748, 771

11

(S.D.N.Y. 2020) ("The Court cannot resolve disputed issues of fact on a motion for summary judgment.").

Finally, Plaintiff contends that Defendant's alleged violations of the Industrial Code establish its liability as a matter of law.  ECF No. 48 at 14.  The Court disagrees.  "Even assuming, arguendo, that plaintiff[] established that defendant violated certain Industrial Code regulations, any such violation does not establish negligence as a matter of law but is merely some evidence to be considered on the question of a defendant's negligence."  *Fazekas v. Time Warner Cable, Inc.*, 18 N.Y.S.3d 251, 255 (N.Y. App. Div. 2015).  As previously discussed, the factual dispute over whether Plaintiff was instructed to leave the power on remains unresolved.  *Compare* ECF No. 49-27 ¶ 14, *with* ECF No. 49-14 at 16, *and* ECF No. 49-9 at 14–15.  Therefore, it is for the jury to decide whether any violation was a proximate cause of Plaintiff's injuries.  *See Rizzuto v. L.A. Wenger Contracting Co.*, 693 N.E.2d 1068, 1071 (N.Y. 1998) ("[O]nce it has been alleged that a concrete specification of the [Industrial] Code has been violated, it is for the jury to determine whether the negligence of some party to, or participant in, the construction project caused plaintiff's injury.").  The jury retains the exclusive role of resolving these disputes.  *Palin v. N.Y. Times Co.*, 113 F.4th 245, 264 (2d Cir. 2024) ("The district court's acceptance of that testimony in the jury's stead improperly infringed on the jury's exclusive role.").  Accordingly, Plaintiff's motion for summary judgment is denied.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion seeking summary judgment on Plaintiff's Section 241(6) Claim, *see* ECF No. 48, and DENIES Plaintiff's motion seeking summary judgment as to that same claim, *see* ECF No. 49-28.  Because the parties have not previously attended a settlement conference, the Court refers this case, for settlement

purposes only, to Magistrate Judge Marutollo to conduct a settlement conference with all parties on a date agreed upon with Judge Marutollo. If the parties are unable to settle this case during their settlement conference, they must file their proposed joint pre-trial order in accordance with Section VI.B of the Court's Individual Practices no later than 30 days after their settlement conference.

    SO ORDERED.

                                              */s/ Hector Gonzalez*
                                                HECTOR GONZALEZ
                                                United States District Judge

Dated: Brooklyn, New York
        December 31, 2024